UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN BRODER,

    Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES,
INC., PATRICIA L. CARUSO, GEORGE
PRAMSTALLER, HENRY GRAYSON,
and JAN EPP, in their individual and official
capacities,

    Defendants.
                                              /

CASE NO. 03-CV-75106-DT
JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANTS CARUSO, PRAMSTALLER, AND EPP'S MOTION FOR SUMMARY JUDGMENT (docket #87)**

Table of Contents

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.    *Federal Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
           1.    *Official Capacity Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
           2.    *Personal Capacity Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      D.    *State Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.  RECOMMENDATION: The Court should grant in part and deny in part defendant Caruso, Epp, and Pramstaller's motion for summary judgment (docket #87). Specifically, the Court should deny the motion with respect to plaintiff's federal civil rights claims against defendant Epp and Pramstaller in their personal capacities based on their role in devising and implementing the medical policies, and should grant the motion with respect to plaintiff's remaining federal and state law claims against defendants Caruso, Epp, and Pramstaller.

II.  REPORT:

A.  *Procedural Background*

Plaintiff Steven Broder, a state prisoner, brings this action pursuant to 42 U.S.C. § 1983 and state law, alleging that defendants failed to timely treat and diagnose his throat cancer. The facts are fully set forth in my Report and Recommendation addressing defendant Mathai and Hutchinson's motion for summary judgment, entered on August 29, 2007, and need not be recounted here.

This Report addresses the motion for summary judgment filed by defendants Caruso, Pramstaller, and Epp on December 20, 2006. These defendants argue that they are entitled to summary judgment on plaintiff's federal civil rights claims because: (1) they are immune from suit under the Eleventh Amendment with respect to plaintiff's claims against them in their official capacities; (2) with respect to plaintiff's claims against them in their individual capacities, there is no evidence that they were personally involved in the alleged deprivation of plaintiff's constitutional rights; (3) plaintiff failed to exhaust his claims against them; and (4) they are entitled to qualified immunity. With respect to plaintiff's state law claims defendants contend that they are entitled to summary judgment because: (1) they were not treating professionals and thus are not liable for

medical malpractice; and (2) with respect to plaintiff's remaining tort claims, they are entitled to governmental immunity. Plaintiff, through counsel, filed a response to the motion on January 19, 2007. On February 7, 2007, defendants filed a notice partially withdrawing their exhaustion argument based on the Supreme Court's decision in *Jones v. Bock*. For the reasons that follow, the Court should grant in part and deny in part defendants' motion for summary judgment.

B.	*Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.     *Federal Claims*

    1.     *Official Capacity Claims*

Plaintiff brings his constitutional claims under § 1983 against defendants in both their individual and official capacities. To the extent that plaintiff asserts his claims against defendants Caruso, Pramstaller, and Epp in their official capacities, the Court should conclude that these claims are barred by the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

4

of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). This immunity is based on a two part presupposition: (1) each state is a sovereign entity; and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961); *see Seminole Tribe of Florida v. Florida*, 116 S. Ct. 1114, 1122 (1996); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Hans*, 134 U.S. at 13. Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986). Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See also*, *Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166-67.

Here, the MDOC defendants are state officials, and plaintiff's claims against them in their official capacities are therefore barred by the Eleventh Amendment. This is so even though, as plaintiff points out, he is alleging a claim based on a state policy. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (noting that policy and custom claims against a state officer may be reached in federal court only to the extent that the plaintiff seeks prospective injunctive relief.). This rule also applies to plaintiff's claims for declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 67-68

(1985).

There is a limited exception to the Eleventh Amendment bar for suits against state officers in their official capacities which seek only prospective relief. To come within this exception, the relief sought by the plaintiff must (1) remedy a continuing violation of federal law; and (2) properly be characterized as prospective. *See Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Seminole Tribe*, 517 U.S. at 73. Plaintiff argues that his claims seeking an injunction prohibiting enforcement of MDOC's health policies satisfies this narrow exception. The Court should disagree. To establish this exception, plaintiff must show that the medical policies he attacks themselves violate federal law, not that they may be unconstitutionally *applied* in the future. The evidence indicates that the policies regarding scheduling of outside speciality visits has now been changed, *see* Pl.'s Br. in Resp. to Def. Mathai & Hutchinson's Mot. for Summ. J., Ex. H, Dep. Tr. of Def. Mathai, at 72-73, and there is no evidence with respect to any deficiencies in handling urgent medical requests under the current policy. Further, plaintiff does not allege that his current medical care is inadequate, only that he may be subjected to unconstitutional medical treatment policies in the future. Thus, there is no prospective relief the Court could award which would address an *ongoing* violation of federal law, and thus the limited exception to Eleventh Amendment immunity for such relief is not applicable. Accordingly, the Court should conclude that plaintiff's claims against the MDOC defendants in their official capacities are barred by the Eleventh Amendment, and the Court should grant defendants' motion for summary judgment with respect to these claims.

    2.    *Personal Capacity Claims*

        *a. Personal Involvement*

Plaintiff also asserts his claims against the MDOC defendants in their personal capacities. The Court should conclude that defendant Caruso is entitled to summary judgment with respect to these claims, but that defendants Pramstaller and Epp are not.

The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware

7

of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, there is no question that defendants were not personally involved in the provision of medical care to plaintiff. *See* Def.s' Br., Ex. 1, Broder Dep. Tr., at 35-36, 38-41, 44-45; Ex. 3, Cutler Dep. Tr., at 85-88. Plaintiff does allege that defendant Epp failed to properly respond to a grievance concerning his medical care, but this allegation is insufficient to establish her personal liability. *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *cf. Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Plaintiff also alleges that defendants are liable in their individual capacities because they were responsible for the policy which caused the alleged deliberate indifference to his medical needs. Contrary to defendants' argument, an official may be liable in his or her individual capacity if a constitutional violation is attributable to an official policy for which he or she is responsible.

8

*See Benas v. Baca*, 159 Fed. Appx. 762, 768 (9th Cir. 2005); *Young ex rel. Estate of Young v. Martin*, 51 Fed. Appx. 509, 514-15 (6th Cir. 2002); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989); *cf. Taylor*, 69 F.3d at 81. However, to succeed on this claim, plaintiff must show not merely that the unconstitutional action was taken pursuant to the policy; plaintiff must also show that the policy itself was unconstitutional. That is, plaintiff must show that the medical policies themselves exhibit deliberate indifference to prisoners' serious medical needs. *See City of Canton v. Harris*, 489 U.S. 378, 388 & n.8 (1989). Further, plaintiff must show that the policy was the "moving force" behind the underlying constitutional violation. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *Graham*, 473 U.S. at 166.[1]

At the outset, plaintiff's policy claim must fail against defendant Caruso. Defendant Caruso was a regional administrator with no responsibility for supervising Epp or Pramstaller and no duties with respect to the institution in which plaintiff was incarcerated. Further, there is no evidence that she had any role in implementing the medical policies or in their application to plaintiff.

With respect to defendant Pramstaller, as MDOC Medical Director he may have had a role in devising and implementing the medical policies. *See* Pl.'s Br. in Resp. to Def. Mathai &

---

[1]As this formulation suggests, and as defendants correctly note, a prerequisite to a policy claim is that there be an underlying constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged *constitutional deprivation*."); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824-25 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue."). Relying on the summary judgment motion of defendants Hutchinson and Mathai, defendants argue that there was no underlying constitutional violation with respect to plaintiff's medical care. However, by a separate Report I have recommended that the Court conclude that genuine issues of material fact remain with respect to plaintiff's underlying constitutional claim.

Hutchinson's Mot. for Summ. J., Ex. F, Dep. Tr. of Def. Pramstaller, at 3. Likewise, there is evidence that Epp, as the regional health administrator, was responsible for implementing health care policies. *See id*. at 92. Further, there is evidence which, if credited by a jury, establishes that the policies were deliberately indifferent to the urgent medical needs of prisoners. Plaintiff notes that under the MDOC policies, any outside specialty care had to be procured by (1) correctly filling out the right form, (2) having it sent to the primary care physician for approval, (3) forwarding it to CMS for approval, (4) having it go to the scheduling unit for the appointment to be made, and (5) then making sure the appointment was actually scheduled. *See* Pl.'s Br. in Resp. to Def. Mathai & Hutchinson's Mot. for Summ. J., Ex. H, Dep. Tr. of Def. Mathai, at 72-76. Plaintiff has also presented evidence that this system was consistently inadequate to ensure timely care for urgent medical needs, that failures to obtain timely care could not be discovered until a prisoner's next scheduled visit, and that the system by design prevented full communication between prison officials and medical personnel. *See id*., Ex. C, at 7; Ex. H., at 79; Ex. I, at 48-49, 70, 76-77; Ex. L, at 19-30; Ex. M, at 54; Ex. O, at 44-45. From this evidence, a jury could conclude that the medical policies in place were themselves deliberately indifferent to the needs of prisoners with urgent medical needs. To be sure, to succeed on this claim it will not be sufficient for plaintiff to show that he was treated with deliberate indifference by the individual medical providers. Rather, he must also show that the policies themselves were the "moving force" behind the underlying constitutional violations, and that defendants Pramstaller and Epp had a personal role in devising and implementing these policies. At this stage of the litigation, however, he has presented sufficient evidence that the policies were the moving force behind his inadequate treatment to withstand summary judgment.

## b. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity with respect to plaintiff's claims against them. The Court should disagree. As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806. In analyzing a claim of qualified immunity, a court engages in a two-step inquiry. First, the court asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff establishes a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Id.*

In determining whether a right is clearly established, a court looks first to the decisions of the Supreme Court, then to those of the Sixth Circuit, and finally to decisions of other courts. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is not enough for a general right–such as the right to adequate medical care–be established; the right must be established "in a more particularized . . . sense" relevant to the defendant's acts or omissions. *Id.* At the same time, the precise conduct at issue need not previously have been held unlawful, and conduct can violate clearly established law "even in novel factual circumstances." *Hope v. Pelzer*,

536 U.S. 730, 741 (2002). "[I]n an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Under *Brosseau*, as the Sixth Circuit has recently explained, a plaintiff may show that a defendant violated clearly established law by showing either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case. *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Here, there is no doubt that plaintiff's right to adequate medical treatment for his urgent medical problems was clearly established. Nor is there any doubt that, if true, prison officials' implementation of deliberately indifferent medical policies would violate clearly established law. Here, as noted above, there is evidence that the medical policies were wholly inadequate to address urgent medical needs, and that defendants Pramstaller and Epp were aware of this fact. This evidence, if believed by a jury, is sufficient to establish a violation of plaintiff's clearly established rights, and thus defendants Pramstaller and Epp are not entitled to summary judgment on the basis of qualified immunity. *See Young v. Martin*, 172 F. Supp. 2d 919, 925 (E.D. Mich. 2001) (Hood, J.), *aff'd*, 51 Fed. Appx. 509, 514-15 (6th Cir. 2002); *Canell v. Bradshaw*, 840 F. Supp. 1382, 1393-94 (D. Or. 1993), *aff'd*, 97 F.3d 1458 (9th Cir. 1996).

*c. Exhaustion*

Finally, defendants contend that plaintiff failed to properly exhaust his claims against them as required by 42 U.S.C. § 1997e(a). The Court should disagree.

There is no question that plaintiff filed a grievance against defendants Pramstaller and Epp,

among others, challenging the adequacy both of his individual treatment and of the medical policies in general. Further, there is no question that this grievance was pursued at each step of the grievance process. *See* Compl., Ex. 1. Defendants nevertheless argue that this grievance is insufficient to satisfy § 1997e(a) because it was untimely. In support of this argument, defendants rely on the Court's decision in *Woodford v. Ngo*, 548 U.S. ___, 126 S. Ct. 2378 (2006). In that case, the Court held that, to satisfy the exhaustion requirement, a prisoner must comply with all procedural requirements for filing the grievance, including time requirements. *See id*. at 2387-89. However, *Woodford* is inapposite here because, even if the grievance naming Pramstaller and Epp was in fact untimely, it was not rejected by prison officials on that basis, and was instead rejected on the merits. Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable. *See Armitage v. Cherry*, No. C-06-00367, 2007 WL 1751738, at *6 (S.D. Tex. May 30, 2007) (citing *Johnson v. Johnson*, 385 F.3d 503, 520 (5th Cir. 2004); *Gates v. Cook*, 376 F.3d 323, 331-32 & n.6 (5th Cir. 2004)); *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134, 1136-37 (D. Nev. 2006). Accordingly, the Court should conclude that plaintiff's claims against defendants Pramstaller and Epp are properly exhausted.[2]

D.   *State Claims*

Defendants also contend that they are entitled to summary judgment with respect to plaintiff's state law claims. The Court should agree.

---

[2]Defendants initially argued that they were entitled to dismissal because plaintiff did not exhaust all of his claims against all of the defendants. Defendants have wisely withdrawn this argument in light of the Supreme Court's determination that § 1997e(a) does not embody a total exhaustion rule. *See Jones v. Bock*, 549 U.S. ___, 127 S. Ct. 910, 919-21 (2007),

13

To the extent that plaintiff asserts his medical malpractice claims against defendants Caruso, Epp, and Pramstaller, the claims fail as a matter of law. "Crucial to any medical malpractice claim is 'whether it is alleged that the negligence occurred within the course of a professional relationship.'" *Cox ex rel. Cox v. Board of Hosp. Managers for the City of Flint*, 467 Mich. 1, 10-11, 651 N.W.2d 356, 361 (2002) (quoting *Dorris v. Detroit Osteopathic Hosp.*, 460 Mich. 26, 45, 594 N.W.2d 455, 465 (1999)). As noted above, there is no question that these defendants did not treat plaintiff. Thus, they did not have a professional relationship with plaintiff which would give rise to malpractice liability.

With respect to plaintiff's state law gross negligence claim, defendant Caruso is absolutely immune from this claim because she is the "highest appointive executive official" in charge of the Department of Corrections. MICH. COMP. LAWS § 691.1407(5); *see Harrison v. Director of Dep't of Corrections*, 194 Mich. App. 446, 452, 487 N.W.2d 799, 803 (1992).[3]

Defendants Pramstaller and Epp are entitled to immunity from plaintiff's state law claims to the extent that they were carrying out a governmental function and did not act with "gross negligence that was *the* proximate cause of plaintiff's injuries." MICH. COMP. LAWS § 691.1407(2)(c) (emphasis added). As the Michigan Court of Appeals has explained, "[g]ross negligence is defined as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Poppen v. Tovey*, 256 Mich. App. 351, 356, 664 N.W.2d 269, 273 (2003) (quoting MICH. COMP. LAWS § 691.1407(2)(c)). Further, "*the* proximate cause" under §

---

[3]Defendants argue that defendant Pramstaller is a "high appointed official" and thus absolutely immune from suit under § 691.1407(5). However, the immunity statute does not provide absolute immunity for "high" officials, but for the "highest" appointed executive official. Pramstaller, as Director of a MDOC department, is not such an official. *Cf. Harrison*, 194 Mich. App. at 452 n.1, 487 N.W.2d at 803 n.1.

14

691.1407(2)(c) is not synonymous with the general tort requirement of "*a* proximate cause." *See Curtis v. City of Flint*, 253 Mich. App. 555, 562, 655 N.W.2d 791, 795 (2002). Thus, "[t]o be the proximate cause of an injury, the gross negligence must be 'the one most immediate, efficient, and direct cause of the injury or damage.'" *Poppen*, 256 Mich. App. at 356, 664 N.W.2d at 273 (quoting *Robinson v. City of Detroit*, 462 Mich. 439, 462, 613 N.W.2d 307, 319 (2000)); *Curtis*, 253 Mich. App. at 562, 655 N.W.2d at 795. Here, even if plaintiff could establish that their conduct was grossly negligent, plaintiff has presented no evidence that Epp's or Pramstaller's role in devising the medical policies was the most immediate, efficient, and direct cause of his injuries. Rather, assuming the truth of plaintiff's allegations, apart from the cancer itself the most direct cause of plaintiff's injuries was the allegedly deficient diagnosis and treatment of his condition by the actual medical providers. Thus, defendants Epp and Pramstaller are entitled to immunity under § 691.1407(c)(2). Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's state law claims.

E.  *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part defendant Caruso, Epp, and Pramstaller's motion for summary judgment. Specifically, the Court should deny the motion with respect to plaintiff's federal civil rights claims against defendant Epp and Pramstaller in their personal capacities based on their role in devising and implementing the medical policies, and should grant the motion with respect to plaintiff's remaining federal and state law claims against defendants Caruso, Epp, and Pramstaller.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

15

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 9/5/07

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 5, 2007.
>
> s/Eddrey Butts  
> Case Manager